This is Warden. Good morning, Ms. Copeland. Good morning, Your Honor.  I am Amy Lee Copeland. I represent Orasama Andrews, who on December 19, 2016, was the benefit of some presidential law guests. The President... Seems to me he might have benefited twice, might have been given more of a benefit than entitled to on the issue that you've got before us today. Your Honor, are you speaking about the aggregation of the terms of imprisonment? Yes, I am. Because when I read what the President signed, his sentence was, he was granted clemency as to the sentence that he was, quote, now serving to a term of 188 months of imprisonment. Now in the recalculation, they took the two sentences and added them together, but it's not yet serving that second sentence. Your Honor, it was the total sentence, however. And that is why the Bureau of Prisons... It wasn't. I mean, there were two sentences, right? He wasn't serving the second sentence. One was consecutive to the other, right? Your Honor, the Bureau of Prisons representative testified on several occasions at the evidentiary hearing that the Bureau of Prisons considered him to be serving both sentences at the time the President entered this order. And just in terms of trying to understand the order that the President signed and making sense of it just as a matter of ordinary language, it seems to me he was now serving the first of the two sentences. Your Honor, the Bureau of Prisons found that he was now serving both. And under Wilson, they have the authority to make that determination and that is the determination that they made. And having made that determination, we look to what a total sentence... Certainly wasn't serving any other sentence. Your Honor, he was serving the 2001 case sentence because Supreme Court and 11th Circuit precedents say that a supervised release revocation sentence is part of that original sentence. Well, counsel, let me ask you this. I have maybe a little more fundamental question. Certainly. And that may be ultimately the issue is, is the sentence included the 36-month portion in the whole of the revocation or not? And that may be the ultimate issue in the case. But my more fundamental question is, assuming there's ambiguity or assuming there is some confusion in the language, what is the deference we give to? Are we giving deference to the President's order? Is that the operative thing to which we would give deference in the case of confusion or whether a lot or a little, depending on Skidmore, or is it the statutes that govern this? What are we looking at to give that sort of deference? Your Honor, I think you have to give deference to the Presidential's commutation letter. And who do we give deference in its reading of that commutation letter? That is a difficult question. Is it? Because if you look at the plain language and the total sentence of imprisonment, as I read it, is that the total sentence includes the sentence, the entire sentence from the 2001 case. Well, again, assuming there's some ambiguity or some confusion on this, and we have a magistrate judge, a district court judge, and at least two smart judges on the right side here who are debating this issue and thinking about this issue, the next paragraph in the President's order gives the Bureau of Prisons and specifically the DSCC, whatever that is, the authority to go calculate. Isn't that the agency or entity to which we give deference to? Your Honor, it directs the Bureau of Prisons to make available the RDAP program to each individual. No, no, the next paragraph after that in the order. So there's the list where the defendant is included, and then in the order, it then says, I apologize, it's a little further down. It comes right to the last page. Yes, you're right. Yeah, I apologize. It's on page 350 of our transcript. This court shall become effective, the one where this grant shall, and then it says, I further direct that once the receipt has been signed by the grant recipient, the defendant here, the BOP shall immediately forward electronic copy to the pardon attorney, which will deliver the copy, the pardon attorney, to the appropriate personnel at the Bureau of Prisons who will recalculate the projected release dates of each respective recipient. And then the Bureau of Prisons has a program statement, 1330.15, if a petition for commutation of sentence is granted, the institutional staff shall recalculate the prisoner's sentence in accordance with the commutation order. Didn't the magistrate, Judge Kline, and you so effectively argue that there really isn't any rule that governs clemency? There is not. So given that, it's up to the BOP to sort of give effect to the words that are in the, and we all agree the words in the commutation order is what governs, to give effect to those words, right? The Bureau of Prisons is the entity responsible for administering sentences, but here they don't have any program statements that they can defer to. There's nothing to defer to in the Bureau of Prisons. Well, they made the decision. They did make a policy decision here in this case. That sentence only included the revocation portion and not the original portion, right? That policy decision was in contravention to Supreme Court and Eleventh Circuit precedent, and even the Bureau of Prisons representative testified that he has to give due accord to what precedent is. Well, those precedents govern different situations like double jeopardy and ex post facto and things that, again, you all effectively argue in your briefs. This situation really has nothing to do with any of that. It's just defining what the term sentence means in this context, in the context of a commutation order. So who do we give deference to where the President himself directs, BOP, I want you to find out and calculate this thing? Your Honor, again, the BOP says we give deference to what the President said. So if you're deferring to what the BOP says, you're really deferring to what the President says in his commutation order. Okay. If we take any evidence of that and the magistrate judge held a hearing here, we know that the pardon attorney's website itself defined the total sentence as just the 24 months and the original sentence, because that's all that was listed on those documents that weren't evidence. Your Honor, that is the BOP's documents. That's correct. I'm sure the government raised the fact that my client only sought commutation on the 2008 case, but the Bureau of Prisons did interpret it as the 2001-2008 case. I know that, but I thought there were other documents that were on the White House's website or the pardon attorney's website that listed just the 24 months of the post-revocation site. Am I wrong on that? I believe the pardon attorney's office did show that the 24 months and the life sentences were the sentences that were commuted. But by commuting the 24-month sentence, again, under precedent, that relates back to the original sentence. He was still serving that original sentence. Otherwise, it would be a void sentence. He couldn't continue to serve a supervised or at least revocation sentence. Even assuming I agree with you that the term sentence in those contexts would apply in those contexts, how could it possibly apply the term sentence in this context where there are two ways to look at it? The sentence could be the whole thing or the 24-month portion, and BOP made the decision as directed by the President. Yeah, BOP, though, again, its decision was we follow what the President says. And so it's really the presidential order. And in here, again, the sentence of imprisonment does have to necessarily relate back to the original sentence. Otherwise, it's a void sentence. Doesn't the term now serving seem to indicate that it's a present condition, a present state of condition? But it talks about the total sentence, Your Honor. Right. A total being the 20, what BOP did, they took the 24, they lumped it with the now life sentence, and they totaled it. And they said that are now serving. And I think you know what I'm going to say, that the total sentence necessarily relates back to the 2001 sentence. Yeah, but that's part of an order that has a lot of different offenders, some of whom are serving concurrent sentences, some of whom are serving consecutive sentences, right? By order, do you mean the presidential grant? Yeah, this executive grant of clemency, which government exhibit five, there are a lot of offenders who were granted clemency, right? So when you use the term total sentence, it could mean a lot of things, right? I'm sorry, Your Honor. There are 29 people covered in this presidential pardon. Where the President thought that it was appropriate to distinguish offenders, he did so. If you'll notice in the next paragraph after Mr. Andrews' commutation, Charles B. Harrison is dealt with individually. Ray Thomas Kelly in the paragraph after that is dealt with individually. If there were a belief that Mr. Andrews needed individual treatment in this commutation order, the President certainly could have done it. The President tried to formulate different sentences. For instance, the first page is dealing with offenders where there is a date certain that the term ends. If the President meant that my client's sentence was to end on a date certain, if it wasn't to include every sentence he was now serving credit-wise, he certainly could have used language to affect that intent. He did not. We are now left with what is the total sentence of imprisonment that my client is now serving. A sentence is more than just a prison term. The government uses prison term 86 times in its brief as opposed to dealing with what is a sentence of imprisonment and what is that total sentence. Here, to make sense of total sentence of imprisonment under 11th Circuit... But you go both ways too. That's the whole point. By aggregating, that's looking at it in terms of a total term. That is an administrative convenience done by the Bureau of Prisons. They may have benefited your client. Right. They made a call. I guess my question is if they made that call and that benefited you and they made another call which didn't benefit you, isn't it their right to make that call and aren't both entitled to deference under long-standing case law of agencies interpreting executive orders? Your Honor, my point is simply that the only deference that the BOP deserves is the deference it gives to the commutation order, which is what its program statements require it to do. My time is up. Yes. You've saved five minutes for rebuttal, Mr. Stugall. I did. Thank you. May it please the Court. Good morning, Your Honor. It's James Stuchel representing the Warden. I'd like to cut right to what I think is really the heart of this case. In 2000 in Johnson v. United States, the Supreme Court ruled that a prison term imposed upon violation of supervised release relates back to the original offense. That's undisputed. BOP has acknowledged and enforced that rule of law at every stage, even when it first revisited the sentence after the commutation, and of course I acknowledged it in my brief. So that's undisputed. But in this case, Andrews makes a rather large leap from that principle and instead argues that the post-revocation prison term somehow extends or revives or resurrects the original prison term that Andrews completed ten and a half years before the commutation. There's no case whatsoever that holds anything remotely that. There's no case supporting the fundamental premise of Andrews' argument. And the reason there's no case is because it just doesn't make sense according to three independent areas of law. The first is governing precedent, both in Supreme Court precedent and this Court's precedent numerous times. This Court has held that a post-revocation prison term is a new sentence, a new part, independent part of the overall sentence package. It's held that on at least three occasions that I could find. So it does not extend the original prison term. It is instead a new sentence. What do you make of Program Statement 5880.28, which talks about the date of the offense? Yes. I believe that says, the portion Your Honor is referring to says the date of the offense is on supervised release revocation, the date of the original offense. Yes, and that is true. But it also says that the sentence of imprisonment cannot begin until the prisoner reports to serve that term of imprisonment. And so in this case, that happened in 2009. But it does say inmates should be given prior custody time credits for time spent in official detention, regardless of whether such detention predated the conduct that led to the revocation. That follows Section 3585, that says they do get prior credit for time that has not already been credited to another sentence. And of course, that initial 37 months was credited to the initial prison term imposed back in 2003. Because otherwise, if you read it differently, if you read it as the other side wishes to read it, what would happen is he'd walk in with 36 month credit and walk right out, right? That's correct. Right. You have to read it to be credit for something that's not something he already served and got credit for at that time. That's correct. Right. If Andrew's argument were correct, it would be well nigh impossible for any prisoner who violates supervised release to ever get sentenced to another prison term, yet it happens thousands of times every year in federal courts across the country. Under Andrew's interpretation, every time a prisoner violates supervised release and the district court opted to sentence him or her back to another prison term, that prisoner wouldn't necessarily have to get credit for the original prison term years ago that led to the term of supervised release. I don't think that's Andrew's argument here, though. His argument is that the total sentence, he's talking about the total sentence, not that you apply the 37 months against the 24, right? Andrews makes three distinct arguments. The one to which I was just referring derives from Section 3585. That's the statute that requires a credit for prior service. And that statute says you get a credit as long as it hasn't already been credited to another sentence. And so this one was credited to another sentence. If Andrews's reading were correct, that would apply only to a sentence imposed upon a different offense of conviction. In fact, Andrews uses that exact phrase in his brief. And so if that were the case, then anyone who gets sentenced to a subsequent prison term, it would never apply to a different offense of conviction. And so every, almost every single prisoner every year in federal court could not receive a subsequent prison term upon revocation because he would have to get a credit for the original prison term, which is almost always longer. Mr. Stitchell, if we just read the executive order, what's the correct interpretation? What is he now serving? I understand, Your Honor. In 2009, the Middle District of Georgia imposed two sentences. The first was a life sentence for the subsequent crime. The second sentence imposed on the same day was 24 months revocation consecutive to the life. So, yes, I have to confess that Your Honor's point was my initial reaction when I started working on this. But after reading the evidentiary hearing transcript, the BOP officials convinced me for two reasons. I mean, first is the interpretation of the commutation order itself. As we've discussed, it says total term of imprisonment. No, it doesn't. It says total sentence of imprisonment. Excuse me? It does not say term of imprisonment. It says total sentence of imprisonment. Now serving. Yes, but the total means that there should be two. Sentences, not terms. Yes, but to have a total, there has to be two elements. And BOP is your... Yes, you could have... I mean, you have... There are a number of... That language is repeated throughout the order. Aren't there probably some offenders here who are serving concurrent sentences? Yes, I imagine so. Yes, I imagine so. Total doesn't mean very much, necessarily. As BOP interpreted in this case... Oh, I know. They gave him the benefit of the doubt. They gave him the benefit of the doubt, yes. I'm just saying, if you really look at it based on ordinary language, the only one he's now serving is the first sentence. That's correct. It would be the life sentence. And if BOP... Now, I mean, Ms. Copeland wants to use, you know, the difference between sentence and for purposes of her argument, but it works against her with respect to what I'm talking about. That's correct. Because you start, for the reason you just started out a minute ago, saying terms when it really says sentence. And if you look at it in that respect, he's only serving one sentence right now. That's correct. That's correct. If Your Honor is correct, though, that BOP, that was an error that inured greatly to Andrews's favor. In fact, it lopped 24 months unjustifiably under that reading off his sentence. And so that's just another indication of why the BOP's actual order was correct. But doesn't the BOP's policy say that you aggregate those sentences even though one is consecutive to the other? Yes. That was my second point is the BOP follows the aggregation statute in almost every case. I think they have some justification in that. For example, in Lulin, this court held that you aggregate for administrative purposes when figure out service for prior service credit. And that was one of Andrews's claims here. It still is in this appeal that they should have given him prior service credit under Section 3584. You said in answer to Judge Pryor's question a little while ago that the BOP convinced you otherwise. Could you elaborate on that? What were you referring to? I was just reading the testimony. They said that this is their policy. They aggregate in almost all these situations. They thought that that was the meaning of the commutation order because it said total term of imprisonment, that that would probably include both the life sentence and the 24 month that the district court imposed on the same day. You agree that for the commutation and pardon power, the president is not bound by whatever is decided by statute or rule regarding calculation, correct? Yes, I do. I do. The president can do whatever he wants? Yes. Well, yes, within, as long as he doesn't violate some other independent provision of the Constitution. They violate the Constitution. Other than that, that's the one limitation, right? Yes. But we still have to presume that the president knows the background law and he knows that a BOP's policy of aggregating sentences. So I still think that's why he used the term total to include both the 24 month and the life sentence. Of course, he used the term sentence and 3584 used the term terms. Yes. But he directed BOP to calculate this. That's correct. And BOP, as I understand it, and you would agree, does not, and I thought one of your witnesses agreed, that does not have rules regarding clemency, at least for the calculation part of things. That's correct. Right. There's a rule on applying for it. There's just no rule for what happens after you get it. That's correct. Right. But the reason there isn't a particular one devoted to clemency is because the program statement that BOP actually uses, 5880, that applies wholesale to all calculation of all sentences imposed after, under the Sentencing Act of 1984. Except to the extent it's not inconsistent with the order. Sure. Sure. Absolutely. The guiding principle here is President Obama's commutation order. I don't think there's any ambiguity. To the extent there is, BOP interpreted it the way it had, and that's definitely not unreasonable. In fact, it's arguably a little overly generous to Andrews in this case. Is that because after listening to the prison officials, you reached one conclusion, but after listening to me, you reverted to your original position? As I said, that was my initial thought when I read the brief, as well as other colleagues in my office. But, you know, we don't, we're not trying to get Andrews a longer sentence. I understand that. Yeah. If there are no other questions or concerns, thank you. Okay. Thank you. Ms. Kupfer. Only briefly, Your Honor, I'm not here today to start an insurrection about supervised release revocation in credits. This is a very narrow situation. He was one of 29 people. I hear about the slippery slope for my friend, and I hear about the parade of horribles. I'll note this. In supervised release revocations outside of a presidential pardon, there are BOP regulations that specifically govern those. There are also administrative office forms that give the district courts the correct language to use so that we don't get into the total sentence of imprisonment. And beyond that, there is an adversary process that goes into supervised release revocation. So at least two sets of eyes with different interests were to view this judgment. This is just a presidential commutation power. It gives broad relief to my client. That relief, I believe, relates back to the original time served on the 2001 case. Thank you. Thank you. And you were court appointed, Ms. Kupfer, and we really appreciate you taking the appointment and discharging your responsibility very well this morning. Thank you. Thank you, Ron.